J-S83001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.D.L.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.B., FATHER | : | No. 2553 EDA 2017 |

Appeal from the Order Entered July 11, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000026-2017

BEFORE: GANTMAN, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED JANUARY 03, 2018**

Appellant, E.B. ("Father"), appeals from the order entered in the Philadelphia County Court of Common Pleas Family Court Division, which granted the petition of the Department of Human Services ("DHS") for involuntary termination of Father's parental rights to his minor child, N.D.L.S. ("Child"). We affirm.

In its opinion, the Family Court fully and correctly set forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them.

Father raises the following issues for our review:

> WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR, WHEN IT INVOLUNTARILY TERMINATED FATHER'S PARENTAL RIGHTS WHERE SUCH DETERMINATION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE UNDER THE ADOPTION ACT, 23 PA.C.S.A. § 2511(A)(1), (2), (5), AND (8).

WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT INVOLUNARILY TERMINATED FATHER'S PARENTAL RIGHTS SOLELY ON THE BASIS OF HIS INCARCERATION.  23 PA.C.S.A. § 2511(B).

(Father's Brief at 7).

Appellate review of termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand.  …  We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact.  The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means

testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191-92 (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

DHS filed a petition for the involuntary termination of Father's parental rights to Child on the following grounds:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for [his/her] physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

*        *        *

- 3 -

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5), (a)(8) and (b). "Parental rights

may be involuntarily terminated where any one subsection of Section

2511(a) is satisfied, along with consideration of the subsection 2511(b)

provisions." ***In re Z.P., supra*** at 1117.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his…parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

***In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

> Termination under Section 2511(a)(1) involves the following:

> > To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

> > > Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

> > Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his…conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

***In re Z.S.W.***, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination

petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his…parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340. The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*,

719 A.2d 327, 330 (Pa.Super. 1998).   With respect to an incarcerated parent, this Court has stated:

> [I]ncarceration alone does not provide sufficient grounds for the termination of parental rights.  Likewise, a parent's incarceration does not preclude termination of parental rights if the incarcerated parent fails to utilize given resources and fails to take affirmative steps to support a parent-child relationship.   As such, a parent's responsibilities are not tolled during incarceration.

*In re Adoption of K.J., supra* at 1133 (internal citations omitted).

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child."  *In re Z.P., supra* at 1118.

"[T]o terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors must be demonstrated: (1) the child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child."  *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa.Super. 2003).

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare.  *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006).  "Intangibles such as love, comfort, security, and stability

are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P.,* (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have his…rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty, which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a

genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his...ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with...physical and emotional needs.

*In re B.,N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of his...child is converted, upon the failure to fulfill his...parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the applicable law, and the reasoned opinion of the Honorable Lyris F. Younge, we conclude Father's issues merit no relief. The Family Court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Family Court Opinion, filed September 20, 2017, at 1-6) (finding: (1) social worker testified at termination hearing that Father did not have visits with Child while in prison; social worker testified she did not

receive any certificate showing Father had completed parenting classes while in prison; Child has been in DHS' care for at least seventeen months; testimony established Child would not suffer irreparable harm if court terminated Father's parental rights; Father has not been present in Child's life due to his incarceration; he is serving 3-6 year sentence, and there is no indication when Father would be free for custody; incarceration has rendered Father unavailable to Child for past seventeen months; Father has not attempted to contact Child while incarcerated; since March 30, 2015, Child has been without essential parental care, control and subsistence necessary for Childs' physical and mental well-being and this situation cannot or will not be remedied by Father within reasonable time; Child has been in care or custody continuously for period in excess of six months, specifically since March 30, 2015; (2) Child is bonded to his maternal aunt and their relationship is of parent-child bond; court found social worker's testimony credible; Child deserves stability and will continue to flourish in his current placement with maternal aunt; termination of Father's parental rights is in Child's best interests; DHS presented clear and convincing evidence for termination of Father's parental rights under Section 2511(a)(1), (2), (5), (8), and (b)).  Accordingly, we affirm based on the Family Court's opinion.

Order affirmed.

Judge Olson joins this memorandum.

Judge Dubow did not participate in the consideration or decision of this case.

- 10 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/3/2018

THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

FAMILY COURT DIVISION

| | | |
|---|---|---|
| IN RE: N.D.L.S. | : | CP-51-DP-0000823-2015 |
| | : | CP-51-AP-0000026-2017 |
| | : | |
| | : | |
| APPEAL OF: E.B. Father | : | Superior Court |
| | : | No. 2553 EDA 2017 |

OPINION

**Younge, J.**

This Appeal arises from this Court's Order on July 11, 2017, terminating the parental rights of E. B. ("father"), pursuant to the petitions filed on behalf of the Department of Human Services ("DHS") by the City of Philadelphia Solicitor's Office. Patricia A. Cochran, attorney for Father, filed a timely Appeal from the July 11, 2017 order terminating father's parental rights including an attached Concise Statement of Errors, Affidavit of Service, and other related documents necessary to perfect this Appeal.

**Factual and Procedural Background:**

A summary of the relevant procedural history is set forth as follows:

On March 29, 2015, the Department of Human Services (DHS) received General Protective Services (GPS) report which alleged N.D.L.S. was in the care of his Father. The report which alleged N.D.L.S. resided in a home with no gas or hot water. It was reported the family was squatting in the home. The report stated Mother called the police and reported Father had abducted N.D.L.S. The report alleged Father informed that police that he had received a text message from Mother asking him to pick N.D.L.S. from the Kensington Area. The report stated Father retrieved N.D.L.S. and took N.D.L.S. to Mother's home. Father stated that he did not return N.D.L.S. to Mother because there was no heat in her home. Mother stated to police that she did not reside at the address that she initially provided. The report further alleged the police went to Mother's home and confirmed there was no gas or hot water in the home. Mother stated that she did not reside in the home but refused to provide another address. Mother was arrested for filing a false report of abduction. The report alleged N.D.L.S. remained in the care of Father. Father had a criminal history and was on probation. The report was determined to be valid.

On March 30, 2015, DHS met with Father at the home of his cousin. Father stated that Mother was residing in the home with no heat or electricity and had mental health and substance abuse issues. Father stated he was recently released from prison and was on parole.

On March 30, 2015, DHS made a visit to the Hospital of the University of Pennsylvania (HUP), where Mother was being treated in the emergency room. Mother denied the allegations of the

GPS report and stated that she had been residing in a domestic violence shelter. Mother stated there had been domestic violence incidents with Father involving her and her paramour.

On March 30, 2015, DHS obtained an Order of Protective Custody (OPC) because due to concerns about N.D.L.S. safety. DHS had received allegations Father had drug use and domestic violence issues.

At the Shelter Care Hearing held on April 1, 2015, the Court lifted the OPC and ordered the temporary commitment of N.D.L.S. to DHS to stand.

Mother had a history of mental health problems, substance use, and unstable housing as well as not complying with treatment recommendations.

At the Adjudicatory Hearing held on April 14, 2015, the Court adjudicated N.D.L.S. dependent, discharged the temporary commitment, committed N.D.L.S. to DHS, and referred Mother to the Clinical Evaluation Unit (CEU) for a drug screen, a dual diagnosis assessment, and monitoring.

On May 20, 2015, an initial Single Case Plan (SCP) was created by the Community Umbrella Agency (CUA) through Asociacion de Puertorriqueños en Marcha. The objectives for Father were to attend ARC to include parenting focused on fathers, housing, employment, GED, and follow all recommendations; to have supervised visits at the agency; to provide APM with family information for possible kinship; to attend anger management, follow recommendations, and sign releases; and to address family violence and address recommendations to include Menergy if appropriate.

On November 16, 2015, it was reported that there had been no compliance with the permanency plan. The Court referred referred Father to CEU for a dual diagnosis assessment and a drug screen.

On January 26, 2016, a revised SCP was created. The objectives for Father were to attend the paternity test; to attend ARC to include parenting focused on fathers, housing, employment, GED, and follow all recommendations; to have supervised visits at the agency; to provide APM with family information for possible kinship; to discuss services including parenting, housing, employment, and visitation with the prison social worker while incarcerated; to attend anger management, follow recommendations, and sign releases; to attend family violence, and address recommendations, to including Menergy, if appropriate; and to make his whereabouts known.

On October 4, 2016, a revised SCP was created. The objectives for Father were to discuss services including parenting, housing, employment and visitation with the prison social worker while incarcerated and to have supervised visits at the agency upon release.

On November 1, 2016, it was reported that there had been no compliance with the permanency plan. Father remained incarcerated at Curran Fromhold Correctional Facility. (CFCF).

The matter was the listed on a regular basis before Judges of the Philadelphia Court of Common Pleas, Family Court Division- Juvenile Branch pursuant to section 6351 of the Juvenile Act, 42 Pa. C.S.A. § 6351, and evaluated for the purpose of reviewing the permanency plan of the child.

In subsequent hearings, the Dependency Review Orders reflect the Court's review and disposition as a result of evidence presented, primarily with the goal of finalizing the permanency plan.

On July 11, 2017, during the Termination of Parental Rights hearing for mother, the Court found by clear and convincing evidence that mother's parental rights as to N.D.L.S. should be terminated pursuant to the Juvenile Act. Furthermore, the Court held it was in the best interest of the child that the goal be changed to Adoption.

The Appeal of father is as follows:

**Issues**

1) Whether under the Juvenile Act, 42 Pa. C.S. section 6351, and 55 Pa. Code Section 3130.74, in accordance with the provisions of the Federal Adoption and Safe Families Act, 42 U.S.C. Section 671 et seq., reasonable efforts were made to reunite the Father with her children and whether the goal change to Adoption was the disposition well suited to the safety, protection and physical, mental and moral welfare of the children.

2) Whether it was proven by clear and convincing evidence that Father's parental rights should be terminated under Sections 2511 (a)(2) and 2511(b).

**Discussion**

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa. C.S. § 2511. Under this statute, the trial court must engage in a bifurcated process in which it initially focuses on the conduct of the parent under § 2511(a). _In the Interest of B.C._, 36 A.3d 601 (Pa. Super 2012). If the trial court determines that the parent's conduct warrants termination under § 2511(a), it must then engage in an analysis of the best interest of the child under § 2511(b). _Id._

In the present case, father's parental rights were terminated based on §§2511(a), (1), (2), (5), (8) and §2511(b).

In proceedings to involuntarily terminate parental rights, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination. _In re Adoption of Atencio_, 650 A.2d 1064 (Pa. 1994). The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitation of the truth of the precise facts in issue." _In re J.D.W.M._, 810 A2d 688, 690 (Pa.Super. 2002).

To satisfy § 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least six (6) months prior to filing of the termination petition, which reveal a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. It is clear from the record that for a period of six (6) months leading up to the filing of the Petition for Involuntary Termination, father failed to perform parental duties for the children. The Court found by clear and convincing evidence that the father refused or failed to perform his parental duties.

In the instant matter, the social worker testified Father did not have visits with N.D.L.S. (N.T. 7/11/17, pgs. 22-23) Father testified he completed the SCP objectives for reunification with N.D.L.S. (N.T. 7/11/7, pg. 31-32) However, further testimony revealed social worker did not

3

have certificates noting Father's completion of reunification SCP objectives. (N.T. 7/11/17, pg. 22-23)

A parent has an affirmative duty to act in her children's best interest. "Parental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *In re Dale A., II*, 683 A.2d 297, 302 (Pa. Super. 1996). In reference to the parental contact, "to be legally significant, the contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship, and must demonstrate and willingness and capacity to undertake the parenting role". *In re D.J.S.*, 737 A2d 283, 286 (Pa.Super. 1999) (quoting *In re Adoption of Hamilton*, 549 A.2d 1291, 1295 (Pa.Super. 1988)).

N.D.L.S. has been in care in DHS care for at least seventeen months (17) (N.T. 7/11/17, pg. 35) While Father testified to have completed objectives towards permanency, Father's incarceration has rendered him unavailable for N.D.L.S. for the past seventeen months. (N.T. 7/11/17, pgs. 31, 38)

Section 2511 (a)(2) requires that "repeated and continued incapacity, abuse neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for her physical or mental well-being and the condition and causes of the incapacity, abuse, neglect, or refusal, cannot or will not be remedied by the parent. 23 Pa. C.S. § 2511 (a)(2).

Termination of parental rights under §2511 (a)(2) is not limited to affirmative misconduct but may include acts of refusal, as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002).

§2511 (a)(5) requires that :

> (5)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of parental rights would best serve the needs and welfare of the child.

§2511 (a)(8) states:

> (8)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve (12) months or more has elapsed from the date of the removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of the parental rights would serve the best needs and welfare of the child.

The evidence as discussed above pursuant to §2511 (a)(5) and (a)(8), equally support the Court's conclusion to terminate father's parental rights.

In order to terminate the parental rights, the party seeking termination must prove by clear and convincing evidence that the termination is in the best interest of the child. 23 Pa. C.S. §2511 (b); *In re Bowman*, 647 A.2d 217 (Pa. Super. 1994). The best interest of the child is determined

4

after consideration of the needs and welfare of the child. The trial court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of this parental rights to determine if the evidence, in the light of the totality of the circumstances, clearly warrant involuntary termination.

When determining the best interest of the child, many factors are to be analyzed, "such as love, comfort, security, security and stability. *In re Adoption of T.B.B.*, 835 A.2d 387, 397 (Pa. Super. 2003). Another factor that a court is to consider is what, if any, bond exist for the child. *In re Involuntary Termination of C.W.S.M and K.A.L.M.*, 839 A.2d 410, 415 (Pa. Super 2003).

Pursuant to Section 2511(b), the Trial Court must take account whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. *In re C.S.*, 761 A.2d 1197(Pa. Super. 2000). In the instant matter, the testimony established that the child, N.D.L.S. would not suffer any irreparable emotional harm if father's parental rights were terminated. (N.T. 7/11/17, pg. 17) Social worker testified Father had not been present in N.D.L.S.'s life due to his incarceration as Father was sentenced to three to six years and no indication when Father would be free for custody of N.D.L.S. (N.T. 7/11/17, pg. 18, 33, 38) Social worker testified Father could not parent N.D.L.S. while he incarcerated. (N.T. 7/11/17, pg. 18) Testimony of the social worker testified the N.D.L.S. was bonded with his foster parent maternal aunt and the relationship resembled a parent-child bond (N.T. 7/11/17, pgs. 18-19)

The Court found the social worker's testimony credible. (N.T. 7/11/17, pg. 38) The Court stated concerns about permanency for N.D.L.S. and his day to day needs if Father was incarcerated. (N.T. 7/11/17, pg. 39) The Court found convincing the testimony that N.D.L.S. deserved stability and indicated he would continue to flourish in his current placement with the foster parent maternal aunt. (N.T. 7/11/17, pg. 37-38)

Hence, the Court concluded the testimony established there is a parent/child bond between N.D.L.S. and his foster parent maternal aunt which did not exist between N.D.L.S. and his father. (N.T. 7/11/17, pg. 37) The Court concluded N.D.L.S. would not suffer irreparable harm or detrimental harm suffered if Father's rights were terminated. (N.T. 7/11/17, pg. 39).

The Trial Court found by clear and convincing evidence that the Department of Human Services met their statutory burden pursuant to 23 Pa. C.S.A. § 2511 (a) (2),(5), (8) & (b) and that it was in the best interest of the child, to change his goal to adoption (N.T. 7/11/17, pg. 39)

**Conclusion:**

For the foregoing reasons, the Court finds that the Department of Human Services met its statutory burden by clear and convincing evidence regarding the termination of parental rights pursuant to 23 Pa. C.S. §2511 (a),(1), (2), (5) and (8) and §2511(b). Furthermore, the Court finds that its ruling will not cause N.D.L.S. to suffer irreparable harm and it is in the best interest of the child, based on the testimony regarding the children's safety, protection, mental, physical and moral welfare, to terminate father's parental rights.

Accordingly, the Trial Court's Order entered on July 11, 2017 terminating the parental rights of Father, E. B. , should be properly affirmed.

5

By the Court:

_____
J.

THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

FAMILY COURT DIVISION

IN RE: N.D.L.S.       :      CP-51-DP-0000823-2015
     :      CP-51-AP-0000026-2017
     :
     :
APPEAL OF: E.B.      :      Superior Court
     :      No. 2553 EDA 2017

---

## PROOF OF SERVICE

I hereby certify that this court is serving, today, September 20, 2017 the foregoing Opinion, by regular mail, upon the following person(s):

Tara Fung Esquire

City of Philadelphia Law Department

1515 Arch Street, 16th Floor

Philadelphia, PA 19103

Patricia A. Cochran, Esquire

1800 JFK Blvd., Suite 300

Philadelphia, PA 19103

Michael Graves, Esquire

1213 Vine Street Suite 203

Philadelphia, PA 19107

BY THE COURT

Honorable Lyris F. Younge

8